IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

ROBERT SCHMIDT,              )
                             )
    Plaintiff,               )
                             )
    v.                       )          Case No. 1:14-cv-00112 (GBL/IDD)
                             )
BARTECH GROUP, INC., *et al.*, )
                             )
    Defendants.              )

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendants' Joint Motion for Summary Judgment.  This case arises from Plaintiff's allegations that Defendants failed to pay him for overtime hours worked. Plaintiff Robert Schmidt brings this civil action against Defendants Bartech Group, Inc. ("Bartech") and Verizon Communications Inc. ("Verizon") for failure to pay overtime (Count I) and retaliatory discharge (Count II) under the Fair Labor Standards Act ("FLSA").  Plaintiff Schmidt also brings a breach of contract claim (Count III) against Defendant Bartech, and a *Bowman* wrongful discharge claim (Count IV) against both Defendants.

The issues before the Court are whether a genuine issue of material fact exists as to: (1) whether Plaintiff Schmidt's position was exempt from the FLSA's overtime requirements; (2) whether Plaintiff Schmidt breached a material term of his employment contract thereby precluding him from bringing forth a breach of contract claim against Bartech; and (3) whether Plaintiff Schmidt voluntarily resigned thereby precluding his *Bowman* wrongful discharge claim.

The Court grants Defendants' Joint Motion for Summary Judgment for three reasons.  First, Plaintiff Schmidt's position as Senior Database Analyst is exempt under 29 U.S.C. § 213(a)(17) and thus precludes his FLSA failure to pay overtime (Count I) and retaliatory discharge (Count II) claims.

1

Second, Plaintiff Schmidt's breach of contract claim against Defendant Bartech (Count III) is precluded by the First Breach Doctrine.  Finally, Plaintiff's *Bowman* wrongful discharge claim fails because his resignation email does not constitute protected activity as a matter of law.

## I.  BACKGROUND

Bartech provides contract workers to perform services for Verizon subject to a Supplier Master Service Agreement.  Defs.' Br. ¶ 3; Defs.' Ex. 2 (Golding Dep.) at 55:12-17.  In or around May or June 2012, Verizon requested a Senior Database Analyst from Bartech to "try to offload" work during Verizon's process of migrating certain computer systems.  Defs.' Br. ¶ 4; Defs.' Ex. 3 (Rockwell Dep.) at 89:13-15; *See* Defs.' Ex. 11 (Hajdo Dep.) at 25:9-16.  Verizon selected Plaintiff Schmidt to fulfill this role on a contractual basis for a period from June 20, 2012 through February 22, 2013.  Pl.'s Compl. ¶ 11; Def. Bartech's Answer ¶ 11; Def. Verizon's Answer ¶ 11.  On September 17, 2012, Bartech informed Plaintiff Schmidt that Verizon had extended his workorder through March 30, 2013, and could continue to do so for up to 2.5 years.  Pl.'s Ex. 1; *See* Defs.' Br. ¶ 6; Defs.' Ex. 3 (Rockwell Dep.) at 71:3-7.

On June 8, 2012, Plaintiff Schmidt acknowledged receiving and reviewing Bartech's Code of Business Conduct ("Code"), Bartech's Contract Employee Handbook ("Handbook"), and Verizon's Guidelines for Contract Worker Assigned to Work at Verizon ("Guidelines").  Defs.' Br. ¶ 10, 14, 16; *See* Defs.' Ex. 6, 7, 9.  These manuals instruct employees to accurately report their hours and prohibits employees from working any unscheduled hours without obtaining prior authorization.  Defs.' Br. ¶ 12, 13, 17; Defs.' Ex. 7 at 32; Defs.' Ex. 9 at 56.  Plaintiff Schmidt also electronically signed Bartech's "Work Assignment Information" sheet, in which he agreed that he was accepting an "IT exempt" position. Defs.' Br. ¶ 8, 18; Defs.' Ex. 4, 10.

Plaintiff Schmidt was paid an hourly wage of $47.50 for work performed at Verizon's Ashburn, Virginia facility. Defs.' Br. ¶ 7. Schmidt set his own schedule at Verizon and generally worked at the worksite between "seven a.m. and three or four p.m."[1] Defs.' Br. ¶ 17; Defs.' Ex. 1 (Schmidt Dep.) at 47:6-12. Verizon expected that Plaintiff Schmidt would have internet access at home in case IT issues arose because "work is to be done at different points in a day within 24 hours." Defs.' Br. ¶ 25; Defs.' Ex. 12 (Vemulapalli Dep.) at 33:22-34:19. Plaintiff Schmidt did not have high-speed internet access at home, however, and refused to have it installed unless Verizon agreed to pay for it. Defs.' Br. ¶ 23; Defs.' Ex. 11 (Hajdo Dep.) at 21:2-10.

Plaintiff Schmidt received his assignments at Verizon from Lisa Hajdo. Defs.' Br. ¶ 27; Defs.' Ex. 3 (Rockwell Dep.) at 15:11-18. Following Verizon's January 2013 reorganization, Chandra Vemulapalli became the Director of the Database Team, which encompassed the work that Plaintiff Schmidt was doing. Defs.' Br. ¶ 28; Defs.' Ex. 3 (Rockwell Dep.) at 33:5-17. On November 3, 2012, Vemulapalli emailed Bradley Rockwell, his Associate Director, inquiring about what workers were doing and "what time they [were] charging on their timesheet." Defs.' Br. ¶ 30; Defs.' Ex. 13. Specifically, Vemulapalli asked how long Plaintiff Schmidt had been with the team and "how much does he really do to help Lisa Hajdo?" Defs.' Br. ¶ 30; Defs.' Ex. 13. Hajdo expressed frustration trying to get results from Plaintiff Schmidt because he was overly analytical and did not like to attend meetings or collaborate with others. Defs.' Br. ¶ 31; Defs.' Ex. 11 (Hajdo Dep.) at 35:18-37:1.

Bartech paid Schmidt based on time records Verizon submitted electronically to Bartech. Defs.' Br. ¶ 32. Verizon required Schmidt to submit a weekly timesheet in Verizon's Pace system reflecting the hours he worked in the prior workweek. Defs.' Br. ¶ 33; Defs.' Ex. 2 (Golding Dep.) at 43:8-14.

---

[1] Plaintiff argues, however, that Plaintiff Schmidt's duties were not confined to the schedule he set because he was required to perform certain tasks at certain times, as necessary. Pl.'s Opp'n ¶ 21; *see e.g.*, Pl.'s Ex. 3.

After Schmidt submitted his timesheet, Verizon would review and approve the timesheet before sending

it to Bartech Managed Service Provider ("MSP"), which managed Verizon's billing process for contract

workers. Defs.' Br. ¶ 34; Defs.' Ex. 2 (Golding Dep.) at 43:8-14.  Bartech MSP would generate

invoices for Verizon from Bartech; Verizon would then pay Bartech MSP, which would then pay

Bartech, which would then pay Schmidt based on the timesheets he submitted through the Pace system.

Defs.' Br. ¶ 34; Defs.' Ex. 2 (Golding Dep.) at 43:8-14.  Schmidt was also required to submit

screenshots of his timesheets to Bartech's email address at verizontt@bartechgroup.com; these

screenshots, however, were only reviewed if there was a malfunction with the reporting system. Defs.'

Br. ¶ 35; Defs.' Ex. 14 (Blankenship Dep.) at 64:13-65:7.

On February 1, 2013, Verizon's Team Lead, Lisa Hajdo, emailed Schmidt requesting that he

load software on to the IT system after hours. Defs.' Br. ¶ 53; Defs.' Ex. 19 at 4.  Schmidt replied that

he was "planning to leave" at 3:15pm but could do it "first thing" Monday morning. Defs.' Ex. 19 at 3.

Hajdo responded:

> I'll do it tonight. Been meaning to talk to you about that…. if you want to
> stay (and think hard about that one!!!)… you're really going to need
> connectivity at home. If production job goes down or there's a priority
> ticket or you're on call this weekend, you have to be able to get online
> right away, it won't necessarily wait for you to drive in to the office… and
> a lot of the loads like this need to be done at night or on weekends. It's just
> not practical to not be able to log in from home. And, a hard stop after 40
> hours isn't really going to work in the long term either. I know that's a
> contract thing, but you can't just not fix a problem because your 40 hours
> are up. Let me know what you think. Lisa."

Defs.' Ex. 19 at 3. Schmidt replied to Hajdo's email by stating:

> Lisa, I have a great respect for you and for all the work you do, and I
> know that Verizon needs at least one more person (perhaps two) just like
> you for this area… but I don't have to think hard at all… talk to Anil about
> contacting Bartech to cancel the contract or request that Bartech find
> replacement for me; I'll also contact Bartech and advise them of your
> concerns. While I want to do what I can to reduce your workload, and if
> Verizon is willing to approve and pay for overtime, then I'll certainly do

4

> what is needed after the 40, but if Verizon needs someone to work longer
> than 40 hours, but does not want to pay them for it, then they need to hire
> someone else as an employee or find a contractor willing to work the extra
> hours for no additional pay.

Defs.' Br. ¶ 54; Defs.' Ex. 19 at 2. Hajdo forwarded Schmidt's email thread to Anil Malyala and

Chandra Vemulapalli, her supervisors. Defs.' Br. ¶ 55; Pl.'s Ex. 7 at 2.

   In a subsequent email to Hajdo, Plaintiff Schmidt went on to suggest his "former co-worker

whose VZ contract was cancelled at the end of 2012 would best suit your needs… He's very intelligent,

is very good with SAS, has connectivity from home.. and lives just a few minutes from Ashburn

campus." Defs.' Ex. 19 at 1-2. Hajdo replied, "Thanks. I'll let you know…" Defs.' Ex. 19 at 1.

   Vemulapalli, Hajdo, and Rockwell allege that they understood Schmidt's email to constitute his

resignation from the workorder prior to its designated end date. Defs.' Br. ¶ 55; Defs.' Ex. 11 (Hajdo

Dep.) at 25:17-26:3; Defs.' Ex. 3 (Rockwell Dep.) at 56:3-12; Defs.' Ex. 12 (Vemulapalli Dep.) at 37:3-

38:9; Pl.'s Ex. 7 at 1-2. In response to Schmidt's forwarded email, McCarty informed Bartech MSP that

he needed additional resumes for Schmidt's position. Vamulapalli claims that by the time she received

Schmidt's forwarded email, he had already decided that he was not going to renew Schmidt's workorder

after March 30, 2013.[2] Defs.' Br. ¶ 57; Defs.' Ex. 12 (Vemulapalli Dep.) at 38:10-13.

   Schmidt is now claiming straight time, at the rate of $47.50 per hour (his contractual rate), for a

total of 84.50 unpaid overtime hours. Defs.' Br. ¶ 48; *See* Defs.' Ex. 1 (Schmidt Dep.) at 129:1-137:21.

Schmidt did not record the hours he is now claiming and Defendants assert that they were not made

---

[2] Plaintiff disputes that Verizon had already decided not to renew his contract by the time they received
his email because Verizon's corporate designee testified that, at the time Verizon received Plaintiff's
complaint email, Verizon was "about to start the process of evaluating contractors, not just [Schmidt],
but all of the contractors that were starting to come due for that March time frame. So that process was
about to being when this – the email hit." Pl.'s Opp'n Br. ¶ 58; Defs.' Ex. 3 (Rockwell Dep.) at 71:8-17,
91:15-92:1.

aware of these alleged overtime hours until this lawsuit.[3]  Defs.' Br. ¶ 48.  The only time Schmidt claims

to have reported working over 40 hours was in the June 24, 2012 timesheet, in which he reported

working 41.5 hours.  Defs.' Br. ¶ 37; *See* Defs.' Ex. 1 (Schmidt Dep.) at 129:1-137:21.  Schmidt

contends that Gary Sommer, a Verizon employee, changed his timesheet to reflect 40 hours for the June

24, 2012 workweek, and advised him that pre-authorization was required prior to working overtime.

Defs.' Br. ¶ 38, 39; Defs.' Ex. 1 (Schmidt Dep.) at 194:8-21.  Schmidt has never received approval for

working overtime at Verizon, and was specifically instructed not to work over 40 hours a week by

Michael McCarty, a Verizon manager, on August 3, 2012.  Defs.' Br. ¶ 40, 42; Defs.' Ex. 1 (Schmidt

Dep.) at 95:8-17, 196:17-197:6; *See* Defs.' Ex. 17 (McCarty Dep.) at 17:10-16.  Verizon asserts that it

expected its contract workers to manage their workload within the confines of the 40 hours per

workweek.  Defs.' Br. ¶ 43; *See* Defs.' Ex. 12 (Vemulapalli Dep.) at 33:5-34:19.

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving

party demonstrates that there is no genuine issue as to any material fact, and that the moving party is

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to

the non-moving party. *Boitnott v. Corning, Inc.*, 669 F.3d 172, 175 (4th Cir. 2012) (citing *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  Once a motion for summary judgment is properly made

and supported, the opposing party has the burden of showing that a genuine dispute exists.  *Matsushita

Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Bouchat v. Baltimore Ravens

Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (citations omitted).  "[T]he mere existence of

some alleged factual dispute between the parties will not defeat an otherwise properly supported motion

---

[3] Defendant Bartech, however, was made aware of Plaintiff's claims after his resignation but prior to the
filing of this Complaint.

6

for summary judgment; the requirement is that there be no genuine issue of material fact." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Anderson*, 477 U.S. at 247–48).

A "material fact" is a fact that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### III.   ANALYSIS

This Court **GRANTS** Defendants Bartech and Verizon's Joint Motion for Summary Judgment because there is no genuine issue of material fact as to: (1) whether Plaintiff Schmidt's position was exempt from the FLSA's overtime requirements; (2) whether Plaintiff Schmidt breached a material term of his employment contract thereby precluding him from bringing forth a breach of contract claim against Bartech; and (3) whether Plaintiff Schmidt voluntarily resigned thereby precluding his *Bowman* wrongful discharge claim.

7

## A. FLSA Overtime Requirements Claim (Count I)

The Court **GRANTS** Defendants' Joint Motion for Summary Judgment on Count I because,

given the record, no reasonable jury could find that Bartech or Verizon willfully violated the FLSA

overtime requirements.  FLSA requires payment of a minimum wage and extra overtime compensation

for employees who are not in certain categories, known as exempt employees.  *Sutherland v. SOS

Intern., Ltd.*, 541 F. Supp. 2d 787, 790 (E.D. Va. 2008).  If an employee is exempt under the FLSA, he is

not entitled to payment of overtime compensation and defendants are entitled to summary judgment.  *Id.*

FLSA exempts from its overtime requirements:

> (17) any employee who is a computer systems analyst, computer programmer, software
> engineer, or other similarly skilled worker, whose primary duty is-- (A) the application of
> systems analysis techniques and procedures, including consulting with users, to
> determine hardware, software, or system functional specifications; (B) the design,
> development, documentation, analysis, creation, testing, or modification of computer
> systems or programs, including prototypes, based on and related to user or system design
> specifications; (C) the design, documentation, testing, creation, or modification of
> computer programs related to machine operating systems; or (D) a combination of duties
> described in subparagraphs (A), (B), and (C) the performance of which requires the same
> level of skills, and who, in the case of an employee who is compensated on an hourly
> basis, is compensated at a rate of not less than $27.63 an hour.

29 U.S.C. § 213(a)(17)(A) – (D).  Whether an employee meets the requirements for exemption is a

mixed question of law and fact.  *Althemus v. Federal Realty Inv. Trust*, 490 Fed. Appx. 532, 535 (4th

Cir. 2012).

There is no dispute, and it is clear from the record that, at all relevant times Plaintiff was an

exempt employee pursuant to 29 U.S.C. § 213(a)(17)(A) – (D).  Furthermore, the record reflects and

Plaintiff does not dispute, that he acknowledged and agreed to the exempted nature of his position,

specifically recognizing that this meant that he would not receive overtime.  Plaintiff's argument that

FLSA requirements cannot be waived is inconsequential.  The Court need not rely on Plaintiff's

acknowledgment of the exempt nature of his position, as it is undisputed by either party that Plaintiff's

8

duties at all times met the requirements for exemption.  In his Opposition Brief, Plaintiff argues that while he is not entitled to time and half under FLSA he is entitled to pay for each hour worked.  Plaintiff does not cite any cases in support of this novel interpretation of FLSA's exemption provision and the Court finds that his position is without merit.

Accordingly, because it is clear and undisputed that Plaintiff was an exempt employee, he cannot bring an FLSA claim seeking payment for hours worked overtime.  For these reasons, the Court **GRANTS** Defendants' Joint Motion for Summary Judgment as to Count I.

### B.  FLSA Retaliation Claim (Count II)

The Court **GRANTS** Defendants' Joint Motion for Summary Judgment on Count II because, given the record, no reasonable jury could find that Bartech or Verizon willfully violated the FLSA Retaliation Provision by terminating Plaintiff's contract after receiving his resignation letter.

The anti-retaliation provision facilitates the enforcement of FLSA's standards by fostering an environment in which employees' "fear of economic retaliation" will not cause them "quietly to accept substandard conditions." *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960).  The Court, however, must interpret the provisions of FLSA bearing in mind the Supreme Court's admonition that FLSA "must not be interpreted or applied in a narrow, grudging manner." *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944).  The Fourth Circuit and its district courts have recognized that an FLSA retaliation plaintiff must show three elements: "(i) that he engaged in an activity protected by the FLSA; (ii) that he suffered an adverse action by the employer subsequent to or contemporaneous with such protected activity; and (iii) that a causal connection exists between the employee's activity and the adverse action." *Boscarello v. Audio Video Sys., Inc.*, 784 F. Supp. 2d 577, 581 (E.D. Va. 2011) (citing *Darveau v. Detecon*, 515 F.3d 334, 341–42 (4th Cir. 2008)).

9

As an initial matter, Plaintiff's claim for violation of the FLSA Retaliation Provision fails for similar reasons as Count I. It follows that because Plaintiff was exempt and therefore not entitled to overtime, that he cannot claim retaliation from the denial of overtime. Additionally, Plaintiff fails to state a *prima facie* case for retaliation.

First, Plaintiff did not engage in any protected activity. To be considered a protected activity the statute requires that the activity or conversation serve as fair notice to employers. *Minor v. Bostwick Labs, Inc.*, 669 F.3d 428, 439 (4th Cir. 2012) (citing *Kasten v. Saint-Gobain Performance Plastic Corp.*, 131 S. Ct. 1325, 1334 (2010). The court in *Minor* further held that, "[t]o protect employers from unnecessary uncertainty, 'some degree of formality' is required for an employee complaint to constitute protected activity, 'certainly to the point where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand that matter as part of its business concerns.'" *Id.* Therefore, to determine whether there has been protected activity the Court must ask "whether [Plaintiff's] complaint to her employer was 'sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'" *Id.* Here, Plaintiff's February 1, 2013 email to his supervisor, Lisa Hajdo, could not reasonably be interpreted as putting her or Defendants on notice.

Plaintiff does not mention the FLSA or any other law, or rights he may be entitled to in his February email. The only assertion related to any requirement of the FLSA, seems to be directed at the new employee Plaintiff suggests Verizon hire. In Plaintiff's email he states, "if Verizon is willing to approve and pay for overtime, then I'll certainly do what is needed after the 40, but if Verizon needs someone to work longer than 40 hours...then they need to hire someone else as an employee or find a contractor willing to work the extra hours for no additional pay." Additionally, Plaintiff's email does not present an issue of a material fact to be considered by a jury and the Court finds that Verizon and

10

Bartech acted reasonably in considering the email a resignation. Under *Minor*, whether a complaint constituted protected activity is determined from the objective perspective of the employer. 669 F.3d at 433. Accordingly, Plaintiff's subjective view that the email was protected activity is of no consequence and does not by itself present a genuine issue of material fact.

Second, there was no adverse action taken by Defendants against Plaintiff. As the Court held in *Darveau*, an FLSA retaliation plaintiff must show "that his employer retaliated against him by engaging in an action 'that would have been materially adverse to a reasonable employee' because the 'employer's actions could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" 515 F.3d at 343. Plaintiff claims that he was fired, based on his February 1, 2013 email, which he alleges was a complaint requesting overtime compensation. It is clear from that same email, however, that Plaintiff voluntarily resigned, asking that Verizon "contact[] Bartech to cancel the contract or request that Bartech find a replacement for [him]." Defs.' Br ¶ 54; Defs.' Ex. 19 at 2. Plaintiff cannot now claim that this action was adverse, when it is in fact his request that triggered the action.

Third, there is no causal link between Plaintiff's Complaint and any adverse action. Because there was no adverse action, Plaintiff cannot claim any causal connection. Accordingly, Plaintiff has failed to allege a *prima facie* case for a claim of retaliation under the FLSA. For these reasons, Defendants' Joint Motion for Summary Judgment is **GRANTED** on Count II.

### C. Breach of Contract Claim (Count III)

This Court **GRANTS** Defendant Bartech's Motion for Summary Judgment on Count III because Defendant Bartech did not breach Plaintiff's employment contract as a matter of law.

Under Virginia law, the cardinal rule applied in the construction of contracts is that the intention of the parties controls. *Paul v. Paul*, 203 S.E.2d 123, 125 (Va. 1974). Where a "contract is complete on

11

its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." *Harris v. Woodrum*, 350 S.E.2d 667, 669 (Va. 1986) (quoting *Berry v. Klinger*, 300 S.E.2d 792, 796 (Va. 1983)).  Courts must be "justly prudent and careful in inferring covenants or promises, lest they make the contract speak where it was intended to be silent, or make it speak contrary to what, as may be gathered from the whole terms and tenor of the contract, was the intention of the parties." *So. Ry. Co. v. Franklin & Pittsylvania R.R. Co.,* 32 S.E. 485, 486 (Va. 1899).  However, "what is necessarily implied is as much a part of the instrument as if plainly expressed, and will be enforced as such." *Pellegrin v. Pellegrin,* 525 S.E.2d 611, 614 (Va. 2000) (quoting *Va. Ry. & Power Co. v. Richmond,* 106 S.E. 529, 536 (Va. 1921)).

The undisputed record reflects that Defendant was not aware that Plaintiff was working what he alleges was unpaid overtime.  Additionally, Plaintiff admits that because he did not report the additional hours he did not expect to be paid for any hours over forty (40).  If, as Plaintiff argues, one of the only two terms of his contract was to be paid for every hour worked, it follows that Plaintiff must accurately report those hours.  No such reporting took place.  Plaintiff's argument that there was no term in the contract which required accurate or timely reporting is inconsequential, as it was implied as a condition of his hourly rate.  Because Plaintiff was paid for each hour he reported working he cannot now claim that there was a breach or that reporting was not a necessary requirement of the contract.

The Court infers that reporting hours was a part of Plaintiff's employment contract.  Thus it follows that Plaintiff breached the contract first when he failed to accurately report the hours he worked.  In so doing, Plaintiff cannot now bring a claim for breach of contract pursuant to the "First to Breach Doctrine."  It is well established in Virginia that "a party who commits the first [material] breach of a contract is not entitled to enforce the contract." *Mathews v. PHH Mortg. Corp.*, 724 S.E.2d 196, 198 (2012); *Horton v. Horton*, 487 S.E.2d 200, 203-04 (1997).  A material breach is a failure to do

12

something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract. *Horton, 487 S.E.2d, at 204*. If the initial breach is material, the other party to the contract is excused from performing his contractual obligations. *Id.*

Here, Plaintiff's failure to report his time worked is a material breach, because his timesheets were so fundamental to the contract that a failure to perform the obligation defeats the purpose of the contract, which was to pay him for the hours he worked. Accordingly, Plaintiff's claim for breach of contract fails as a matter of law, and Defendant Bartech's Motion for Summary Judgment on Count III is **GRANTED**.

### D. *Bowman* Wrongful Discharge Claims (Count IV)

The Court **GRANTS** Defendants' Joint Motion for Summary Judgment on Count IV because, given the record, no reasonable jury could find that Bartech or Verizon's conduct amounted to the *Bowman* exception or was otherwise against public policy.

In *Bowman v. State Bank of Keysville*, the Supreme Court of Virginia permitted at-will employees of a bank, who also owned shares of the bank's common stock, to prosecute claims against their former employer, the bank, which allegedly fired the stockholder employees in retaliation for their failure to vote in favor of the bank's proposed merger. 331 S.E.2d 797 (Va. 1985). The Supreme Court of Virginia recognized a narrow exception to the employment-at-will rule. *Bowman*, 331 S.E.2d at 800–01. The Court held there, that the at-will employees had a wrongful discharge claim because the alleged discharges violated the public policy of the Commonwealth as articulated in Va. Code § 13.1–32, now Va. Code § 13.1–662. *Id.* Under *Bowman*, an at-will employee may bring a common law claim of wrongful discharge if the employee's termination violates Virginia's public policy. *See id.*; *City of Virginia Beach v. Harris*, 523 S.E.2d at 245.

Similar to the retaliation claim in Count II, to state a claim for wrongful discharge, the Plaintiff must establish that his termination resulted from the employer's violation of a public policy. Here, Plaintiff was not discharged, but instead voluntarily resigned. *Bowman*, merely provides an exemption to the common law doctrine of at-will employment, which states that employers are free to terminate an employment relationship with or without cause. Here, Plaintiff was not terminated or discharged, and thus his claim fails as a matter of law. Accordingly, because Plaintiff voluntarily resigned and was not discharged, it logically follows that he cannot bring a claim for wrongful discharge. Therefore, the Court **GRANTS** Defendants' Joint Motion for Summary Judgment on Count IV.

## IV.    CONCLUSION

The Court grants Defendants' Joint Motion for Summary Judgment for three reasons. First, Plaintiff Schmidt's position as Senior Database Analyst is exempt under the 29 U.S.C. § 213(a)(17) and thus precludes his FLSA failure to pay overtime (Count I) and retaliatory discharge (Count II) claims. Second, Plaintiff Schmidt's breach of contract claim against Defendant Bartech (Count III) is precluded by the First Breach Doctrine. Finally, Plaintiff Schmidt's *Bowman* wrongful discharge claim fails because his resignation email does not constitute protected activity as a matter of law. For the reasons stated above, it is hereby

**ORDERED** that Defendants' Joint Motion for Summary Judgment (Doc. 38) is **GRANTED**.

**IT IS SO ORDERED.**

ENTERED this _____ day of November, 2014.

Alexandria, Virginia
11 / __ / 2014

                                              /s/
                                    _____
                                    Gerald Bruce Lee
                                    United States District Judge